UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNINA PUCCIO,<br><br>        Plaintiff,<br><br>    v.<br><br>STANDARD INSURANCE COMPANY, et al.,<br><br>        Defendants. | Case No. 12-cv-04640-JD<br><br>**ORDER DENYING SUMMARY JUDGMENT AND REMANDING TO PLAN ADMINISTRATOR**<br><br>Re: Dkt. No. 64 |

Plaintiff Annina Puccio has sued defendant Standard Insurance Company ("Standard") under the Employee Retirement Income Security Act ("ERISA") for denial of long-term disability ("LTD") benefits.[1] As Standard forthrightly acknowledges, Puccio has experienced a number of health problems and is disabled. Dkt. No. 78 at 2. Standard disbursed full LTD benefits to Puccio under her plan for mental and musculoskeletal disorders, both of which were limited to 24-month payment periods. But Standard denied Puccio LTD benefits for disability attributable to other physical conditions, such as gastrointestinal issues and Addison's disease, that are not subject to the 24-month limitation. Standard has moved for summary judgment on the ground that the denial decision was within its lawful discretion. The Court has carefully considered the record and the parties' written and oral arguments, and now denies the motion and remands the matter to the plan administrator to re-evaluate plaintiff's eligibility for benefits.

## BACKGROUND

Puccio enrolled in an LTD insurance policy provided by Standard while working for NetApp Inc. as the Senior Manager of Assessments and Certification. Administrative Record

---

[1] NetApp is also a named defendant, but any benefit award would be paid by Standard. Dkt. No. 65 at n.1. The Court will therefore refer only to Standard.

("AR") 560, 1303-1333, 1468-1495. After an unsuccessful gastric bypass surgery to treat bariatric issues, Puccio stopped working on January 28, 2009, and submitted a claim for disability benefits. AR 547-48, 604, 646. This submission started a long and convoluted exchange between Puccio, Standard, multiple doctors, and attorneys that would run through 2014.

Standard initially denied the 2009 claim. AR 564-68. To qualify for benefits under the Standard plan, Puccio had to be "disabled." AR 1503. According to the plan, a person is disabled "if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation." *Id*. Puccio's "Own Occupation" required sedentary material duties. AR 1600. Standard had an outside physician consultant review Puccio's medical records, and he found no evidence of permanent work limitations due to physical disease or injury. AR 262. Standard also had an outside psychiatrist review the records, and she too found no evidence of a permanent inability to work. AR 265. Consequently, Standard denied the claim in all respects. AR 564-68.

Puccio appealed on August 17, 2009, and provided Standard with additional medical records. AR 560-61. Standard sent her file to its Administrative Review Unit (ARU) to conduct a second review. AR 551, 1436. Additional outside physicians were consulted. AR 1146-48. Following these consultations, Standard changed course and informed Puccio on October 2, 2009, that her records supported a finding of disability for mental health conditions. AR 1435-36. In a letter dated January 8, 2010, Standard advised Puccio that she would receive LTD benefits for the "Mental Disorder Limitations Period" of 24 months. AR 234-35, 1312. Standard also told Puccio that it would review her claim again before the 24 months expired to see if she had a separate and independent disabling condition entitling her to other benefits. AR 234-35.

Standard conducted this additional review in early 2011. AR 1032-33. Dr. Steven Beeson reviewed the record for Standard and found no qualifying physical disability. *Id*. Puccio then submitted additional records, which showed a recent diagnosis of fibromyalgia. AR 933. The new records included an office visit report prepared by Puccio's primary care physician that identified 15 "chronic conditions" afflicting Puccio ranging from asthma to bipolar disorder, esophageal dysmotility and osteoarthrosis in addition to fibromyalgia. *Id*. Significantly, the office

2

visit report also noted that Puccio's "Social Security" claim "went through." *Id.*

At Standard's request, Dr. Beeson reviewed the new records. AR 888-90. Standard also sent them to a rheumatologist, Dr. Shirely Ingram, in light of the fibromyalgia diagnosis. AR 891-93. Dr. Beeson found that "from at least the beginning of January through approximately mid August 2010, the patient was really quite miserable with what appears to be a severe esophageal motility disorder. However, after August 11, 2010, it appears the patient is actually doing quite well with the use of new medications." AR 889. Dr. Ingram concluded that Puccio's medical records did not support a finding that fibromyalgia limited her ability to perform her job. AR 859-60. As a result, Standard informed Puccio that her benefits would end because Standard found no new independent disabling condition. AR 1279-1284, 1297.

Puccio appealed again and her file was returned to the ARU. AR 1272. Standard had another physician, Dr. Ronald Fraback, review her records. AR 845-49. According to Standard, because Puccio's gastrointestinal issues appeared to have improved, Dr. Fraback focused on other issues such as fibromyalgia and osteoarthritis.[2] AR 845. Dr. Fraback suggested that Standard obtain an in-person Functional Capacity Evaluation of Puccio, which was conducted by Physical Therapist Sandy Schall. AR 773, 765, 1258-60. Schall concluded that Puccio has "significant physical disability and impaired movement dysfunction, displayed by joint and spinal restrictions, generalized weakness, limited physical endurance, significant painful behavior which was consistent throughout the testing, and some impaired cognitive function." AR 1212.

Standard ultimately concluded that Puccio's fibromyalgia and osteoarthritis were disabling conditions, and provided LTD coverage, including back-payments, under the plan's terms for musculoskeletal and connective tissue disorders. AR 1225-27. As with the Mental Disorder limitation, the LTD policy limited benefits for these conditions to a maximum of 24 months. AR 1225-27, 1312, 1323. The new benefits were set to run until February 3, 2013. AR 1227.

Puccio had the opportunity to establish another independent disabling condition on or before February 3, 2013, to obtain new LTD benefits. AR 1210-11. Puccio appears to have

---

[2] The medical records are inconsistent on whether Puccio suffered arthritis, arthrosis or both. They are different conditions. The Court uses the terms that the cited records use.

submitted another set of medical records, which included a diagnosis of Addison's disease, a potentially crippling endocrine disorder. In a letter dated December 7, 2011, Standard acknowledged that it "is aware that Ms. Puccio now has a diagnosis of Addison's disease" and that it "will monitor this condition and determine in the future whether or how it may, in the absence of other Limited conditions, prevent her from working." AR 1227.

Around this time, it appears plaintiff was also applying for Social Security Disability benefits. AR 242. In January 2011, she was awarded Social Security benefits retroactive to August 1, 2009, and Standard was notified. *Id.* On January 27, 2011, Standard wrote to Puccio: "Now that you have received your award from Social Security, an overpayment of your LTD Benefits has accrued. This amount must be repaid to The Standard." *Id.* As of January 31, 2011, Puccio purportedly owed Standard $23,210. *Id.* Standard also decreased Puccio's future LTD monthly payment by the amount of her social security payments. *Id.* Standard never reviewed or even requested the decisions, evaluations or records of the Social Security Administration on Puccio's claim.

Puccio launched this litigation in August 2012 by filing a complaint in California state court. Defendants removed the suit to this Court on September 5, 2012. Dkt. No. 1. Standard temporarily suspended further review of Puccio's claim, but continued to pay her benefits "by exception" through August 3, 2013. AR 1624. When Standard resumed the review, Dr. Fraback again analyzed Puccio's records and concluded she remained unable to work because of fibromyalgia and osteoarthritis, but not because of any other condition. AR 1627-30. Standard did not conduct an in-person medical evaluation. On August 16, 2013, Standard informed Puccio that her claim for further benefits was denied. AR 1603. The letter states in pertinent part:

> In reviewing the claim file to determine if there are conditions other than fibromyalgia, mental disorders and osteoarthritis that are causing Ms. Puccio to be Disabled, we looked at the documentation to determine what conditions were identified. It is noted that Ms. Puccio is or has been treated for GI problems, hypertension, hyponatremia, headaches due to a car accident and has a history of Asthma, a foot neuroma and some fungal toenails which started to cause pain. . . . These conditions have not been identified in the medical documentation as causing limitations precluding her from performing a sedentary occupation. One other condition . . . is a glucocorticoid deficiency, also diagnosed in places as Addison's

> disease.  This deficiency is treated with hydrocortisone dosage and as the medical documentation indicated is well controlled . . . The medical records are clear and consistent that Ms. Puccio is being treated for fibromyalgia and osteoarthritis on a regular basis and that those conditions are what limit her inability to work.

*Id*.  Puccio appealed this decision on February 23, 2014, and put particular emphasis on the Addison's disease issue.  AR 1986.  She provided a declaration and deposition transcript from her primary care physician, Dr. Mei Chow-Kwan.  AR 1986-94.

Once again, Standard sent the file to the ARU for review.  AR 2331.  It contracted with two physician consultants, Dr. Timothy Boehm, an endocrinologist who focused on Puccio's Addison's disease, and Dr. Jeffrey N. Retig, a gastroenterologist who focused on Puccio's gastrointestinal issues.  AR 1958-60, 1949-57.  Dr. Boehm concluded that Puccio's medical records were insufficient to make a diagnosis of Addison's disease and Dr. Retig concluded that the records did not document symptoms that would prevent Puccio from performing full-time sedentary work.  *Id*.  Again, no in-person evaluation was done.  Neither Dr. Boehm nor Dr. Retig examined Puccio.  In a letter dated May 7, 2014, Standard determined that Puccio's records failed to provide sufficient detail as to why her Addison's disease or gastrointestinal issues are independently disabling.  AR 2319-20.  Standard concluded that Puccio was not disabled from a condition other than the ones for which she had already received the maximum benefits, denied her appeal and closed the file.  AR 2313-29.

As Standard acknowledges, it functions as the LTD plan administrator who determines whether a claim is valid and also as the insurer who pays out the benefits.  Dkt. No. 65 at 16.  The plan vests Standard with the discretion to determine entitlement to benefits, administer claims, interpret the policy terms and resolve all questions about the application of the LTD policy.  AR 1326-27.

## DISCUSSION

### I. THE LTD POLICY

As an initial matter, plaintiff objects that Standard has failed to establish that the plan documents it depends upon for this motion are, in fact, the plan she enrolled in.  Dkt. No. 74 at 8.

Puccio alleges Standard "substituted" her original long-term benefits policy for a lesser, more limited policy. *Id.*

Whether construed as a foundation or authenticity challenge, this objection is overruled. Standard has amply established that the plan documents it tendered are the ones governing this dispute. The controlling policy is the Group Long Term Disability Insurance Policy, No. 636188-C. AR 1468-1520. Mark Sampson, a Benefits Review Consultant with Standard, attached "the controlling plan documents in this matter," including No. 636188-C, to his declaration. Dkt. No. 66 at 1. This group policy number is repeatedly referenced on communications with plaintiff beginning in 2009. *See, e.g.* AR 219-222. Moreover, in a letter dated August 1, 2011, Puccio requested a copy of "contract 636188," which Standard provided to her two days later. AR 1301. Puccio has failed to raise a genuine issue of material fact regarding whether this policy governs. Standard has provided sufficient foundation, and the Court finds this policy controls.

## II. LEGAL STANDARD

ERISA allows a participant in an employee benefit scheme to bring a civil action to recover benefits due under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). A *de novo* standard of review will apply to actions for the recovery of ERISA benefits, unless the plan in question grants discretionary authority to the trustee or fiduciary. *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 114-15 (1989). If a plan unambiguously grants the plan administrator discretionary authority to construe the plan's terms, the appropriate standard of review is for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). "Under this deferential standard, a plan administrator's decision 'will not be disturbed if reasonable.'" *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506 (2010)).

It is undisputed here that Standard had full discretionary authority as administrator under Puccio's plan. Consequently, the abuse of discretion standard applies. But the Court's application of that standard is informed by the conflict of interest inherent in Standard's dual role as the administrator of claims and the insurer who pays the benefits. *Metro. Life Ins.*, 554 U.S. at 112-13. When, as here, the same entity that makes the eligibility decision also pays the benefits, there

1  is a built-in conflict from the financial incentive to deny claims. *Id*. at 112 (describing conflict as
2  "'every dollar saved . . . is a dollar in [the employer's] pocket'") (citation omitted); *Montour v.*
3  *Hartford Life & Accident Ins. Co*., 588 F.3d 623, 630 (9th Cir. 2009) (same). While this conflict
4  does not displace the deferential standard of review, it is one of the several, case-specific factors
5  the Court considers in determining whether a plan administrator abused its discretion in denying a
6  benefits claim. *See Met Life Ins.*, 554 U.S. at 117; *Montour*, 588 F.3d at 630.

7  The Ninth Circuit has provided additional guidance by identifying a number of factors that
8  should be considered: (1) the extent to which a conflict of interest appears to have motivated an
9  administrator's decision; (2) the quality and quantity of the medical evidence; (3) whether the plan
10 administrator subjected the claimant to an in-person medical evaluation or relied instead on a
11 paper review of the claimant's existing medical records; (4) whether the administrator provided its
12 independent experts with all relevant evidence; and (5) whether the administrator considered a
13 contrary Social Security Administration ("SSA") determination of disability. *Montour*, 588 F.3d
14 at 630. If the facts and circumstances of the case show that the conflict of interest "may have
15 tainted the entire administrative decisionmaking process, the court should review the
16 administrator's stated bases for its decision with enhanced skepticism." *Id*. at 631.

### III.  STANDARD ABUSED ITS DISCRETION

There is no dispute that Puccio is disabled. She has multiple medical conditions that limit her ability to work. The only dispute is whether her disabilities are covered by the LTD policy or whether she has exhausted the maximum benefits allowed under the policy for her particular conditions. Based on the undisputed facts in the administrative record and governing Ninth Circuit law, the Court finds that Standard abused its discretion when it denied plaintiff LTD benefits beyond the mental health and musculoskeletal coverage.

The Court's application of the *Montour* factors drive this conclusion. Specifically, factors 3 and 4 weigh against Standard. Standard should have conducted an in-person medical evaluation to assess the disability impact of Puccio's Addison's disease, gastrointestinal problems and other issues. While in-person exams are by no means mandatory, the complexity of Puccio's health conditions, and the volume of her medical records, and their lack of clarity, all should have alerted

7

Standard to the value of an in-person evaluation and the evidence that it would provide.  None of Standard's medical experts ever examined plaintiff for any condition pertinent to evaluating her claim.  In fact, Standard's team never even spoke with any of Puccio's treating physicians about her records or status.  Instead, Standard limited itself purely to a paper review of her medical records at the cost of ascertaining all the facts from an in-person exam.  That alone "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Montour*, 588 F.3d at 634 (quotations and citation omitted).  As the Supreme Court has noted, it also calls into question the impartiality of Standard's consulting physicians because the record indicates those experts lacked access to "all of the relevant evidence." *Metro. Life Ins.*, 554 U.S. at 106-07.

Factor 5 also weighs heavily against Standard.  Standard made no effort to obtain, let alone consider and meaningfully distinguish, the SSA's award of disability benefits to Puccio.  Standard knew the SSA had awarded her benefits and even sought to seize a portion of them for itself.  AR 242.  Standard also decreased Puccio's future LTD monthly payment by the amount of her Social Security payments.  *Id*.  And yet, the August 16, 2013 letter denying Puccio's claim and the May 7, 2014 letter denying her appeal fail to mention the SSA determination at all.  AR 1596-1604, 2313-20.  Standard never asked for the SSA's findings or differentiated those findings from Standard's determination to deny benefits.

"Evidence of a Social Security Award of disability benefits is of sufficient significance that failure to address it offers support that the plan administrator's denial was arbitrary, an abuse of discretion." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011).  While Standard was "not bound by the SSA's determination, complete disregard for a contrary conclusion without so much as an explanation raises questions about whether an adverse benefits determination was 'the product of a principled an deliberative reasoning process.'" *Montour*, 588 F.3d at 635 (citation omitted).  "Ordinarily, a proper acknowledgement of a contrary SSA disability determination would entail comparing and contrasting not just the definitions employed but also the medical evidence upon which the decisionmakers relied." *Id*. at 636.  Here, Standard did nothing whatsoever to consider and account for the SSA's disability determination.

Taken together, these factors alone support a finding that Standard abused its discretion, but there is more. Standard also failed to request the specific evidence that it and its reviewing physicians concluded was necessary to evaluate Puccio's claim. *Montour*, 588 F.3d at 636 (requiring a "plan administrator denying benefits in the first instance to notify the claimant . . . of what additional information would be necessary 'to perfect the claim.'") (citation omitted). The August 16, 2013 letter denying Puccio's claim explained: "If you request a review, you will have the right to submit additional information in connection with the claim. Additional information which would be helpful to a review includes any information which documents Ms. Puccio has a condition other than those limited by the policy that would cause her to be Disabled." AR 1603. In appealing the decision, Puccio submitted a declaration from her primary care physician, Dr. Mei Chow-Kwan, stating that Puccio has "multiple medical conditions, including fibromyalgia and Addison's disease that cause her constant pain and tire her out to a great degree." AR 1989. She also provided a letter for Dr. Chow-Kwan stating that she was diagnosed with "gastrointestinal dysmotility" and that she had "persistent fatigue and weakness and Addison's was diagnosed." AR 1993. "Her pains, fatigue, weakness and continued GI symptoms limited her ADL's, standing, sitting or walking. She frequently needed others to lift her out of bed in the mornings. She has a service dog and 2 [caregivers alternating schedules] to take care of her daily needs…[H]er activities are mostly limited to doctors appointments, physical and pool therapy appointments with naps and rests in between." *Id*.

The question here is whether Standard properly advised Puccio of the additional information it considered useful to review her claim. It did not. In the letter affirming the denial of benefits, Standard faulted Puccio because she "did not explain how any of the information in the claim file supports that, in the absence of her psychiatric and musculoskeletal and connective tissue disorders, Ms. Puccio's Addison's disease alone would prevent her from performing sedentary level work." AR 2319. The Ninth Circuit has emphasized that ERISA regulations call for a "meaningful dialogue" between a claims administrator and plan beneficiary. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 873 (9th Cir. 2008). A beneficiary is entitled to a "description of any additional material or information that was necessary for her to

perfect the claim, and to do so in a manner calculated to be understood by the claimant." *Id.* (quotations and citation omitted). Standard never informed Puccio that it needed information specifically stating that her Addison's disease or gastrointestinal issues would prevent her from performing sedentary level work, separate and apart from the other conditions. Plaintiff was entitled to a description of this information, as well as an explanation of why the documents she did submit were insufficient and what specific documentation would be sufficient. *Id.* Instead, without engaging in any dialogue or asking for any additional records, Standard denied benefits. AR 1596-1604. If Standard required specific information to evaluate Puccio's claim, Standard needed to ask for it. *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).

## IV. REMAND TO PLAN ADMINISTRATOR

ERISA affords the Court a wide range of remedial powers, including the power to return a benefits claim to a plan administrator for consideration of additional medical information. *See Williamson v. UNUM Life Ins. Co. of Am.*, 160 F.3d 1247 (9th Cir. 1998). This is especially appropriate in situations where it is impossible to know how the plan administrator would have acted had it not abused its discretion. Here, it is unknown whether Standard would have found plaintiff "disabled" had it properly solicited, received and considered the additional potential evidence discussed in this order. A remand is appropriate.

## CONCLUSION

Defendant's motion for summary judgment is denied. Plaintiff's claim is remanded to the plan administrator for reconsideration of plaintiff's entitlement to LTD benefits. The plan administrator shall allow plaintiff to supplement her file with any additional medical records necessary to evaluate plaintiff's disability.

**IT IS SO ORDERED**.

Dated: February 20, 2015

_____
JAMES DONATO
United States District Judge